# Bentz *against* Armstrong.

Where several persons unite in the purchase of a piece of ground, and divide the same into smaller lots, upon each of which a house is built, and then partition is made between them, each must so regulate and grade his own lot as that the water that falls or accumulates upon it shall not run upon the lot of his neighbour.

ERROR to the District Court of *Allegheny* county.

Robert Armstrong against William Bentz. John Wilkinson being the owner of a lot 50 feet in front on Quarry street, in Pitts-

[Bentz v. Armstrong.]

burgh, agreed that his two partners in the plastering business, Bentz and Crawford, should be equally interested with him, and he conveyed to them accordingly; after which they divided the same into two lots of fifteen feet each, one of sixteen feet, and an alley of four feet between them for the accommodation of all, and they built three houses upon them. Upon the dissolution of their partnership, each took one of the houses and lots. Upon the lot of Crawford a spring of water rose. Crawford sold to Armstrong, the plaintiff. The water from the spring and from the house and lot of Armstrong, in consequence of a natural descent in the ground, ran over the lot of Bentz, who at his own lot placed an impediment in its way, which stopped it, and it ran back into Armstrong's cellar; and for the injury done thereby, this action was brought.

*Robinson*, for plaintiff in error.
*Lowrey*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The principal error in this case is an exception to the charge of the court upon a point on which it was thought the plaintiff's right to recover mainly depended. The plaintiff below claimed a right to turn the water which fell upon his lot from rain, as also that which arose from a spring on it, upon the adjoining lot of the defendant below. This claim of the plaintiff below was resisted by the defendant, who placed an obstruction on his own lot, so as to prevent the water running on it from the plaintiff's lot; but the consequence seems to have been that the obstruction caused the water to run down on the plaintiff's lot, so as to produce some inconvenience, at least, if not injury to him. For this cause he brought this action, and the court, in their charge to the jury, instructed them, in regard to this matter, that if they believed the facts testified to, the plaintiff had established his right to an easement; that is, a right to turn the water off his own lot upon that of the defendant, so as to get clear of it, and prevent his being incommoded by it in the occupation and enjoyment of his buildings. This was, in effect, deciding the cause in favour of the plaintiff below; for the only remaining fact upon which the plaintiff's right to recover rested, was that of the defendant's having obstructed and prevented the water from running over his own lot from that of the plaintiff's, which was not contested. Being desirous at all times to sustain the charge of the court to the jury, when it can be done fairly and truly, all the facts testified have been carefully examined and looked into with that view, and it does not appear to us that any facts have been testified to, going in the slightest degree to establish the plaintiff's right to an easement, such as he claims in this case. We therefore

VIII. — 6　　　　D *

[Bentz v. Armstrong.]

think that the court erred in their instruction to the jury on this point.

In the argument, something was said about the natural formation of the surface of the ground of the two lots, and that, according to it, the water as it fell in rain was naturally inclined to run off from the lot of the plaintiff on to that of the defendant below, and the latter was therefore bound to submit to it. This, however, I take to be a *non sequitur ;* for in the purchase of lots of ground laid out and sold for the purpose of building up towns or cities thereon, it has ever been understood, and such has been the practice and usage too, that the natural formation of the surface will, and indeed must, necessarily undergo a change in the construction of the buildings and other improvements that are designed and intended to be made. In doing this, it would seem to be right that the common benefit and convenience of the respective owners of adjoining lots should be consulted and attended to; but certainly no one ought to be restrained from improving his lot in such a manner as to make it answer the purpose for which it was laid out, sold and purchased, if practicable without overreaching upon his neighbour's lot. He ought to be permitted to form and regulate the surface of it as he pleases, either by excavation or filling up, as may be requisite to the convenient enjoyment of it; taking care, however, not to produce any detriment or injury to his neighbour in the occupation or enjoyment of his adjoining lot. It is of great importance that the water upon each lot, arising from rain or other cause, should be conducted by the owner or occupier thereof, if he wishes to have it removed, directly from it to a sewer or other place appropriated for the receipt and discharge of the same, and not be turned or led on to an adjoining lot, without the consent of the owner; and it appears to me to be the duty of the owner of each lot, if he improves it, to do it in such way, if practicable, as to lead and conduct the water that happens to fall or be on it, off in the way just mentioned, without regard to the original formation of the surface of his lot. If the rear of his lot should be elevated so much above the front that he cannot conduct the water to the rear, so as to discharge it into a sewer or other appropriate place, then he ought to bring it to the front of his lot, where he must of necessity have some place to discharge it, without throwing it upon his neighbour's ground. This he ought to do, even if he should be compelled to carry it under or through his house or buildings. As to the exceptions to evidence, we cannot say that they ought to be sustained; for if what the witnesses were called to testify to occurred before the commencement of this suit, it is not denied that it would be admissible; but to render it inadmissible, it ought to appear distinctly that it occurred after the suit was commenced, which is not the case. Whether it occurred before or after was, therefore, a question to be referred

to the jury, with a direction from the court, if they should be satisfied that what the witnesses testified they saw was before the commencement of the suit, then it was evidence for their consideration; otherwise, not. The judgment, however, must be reversed on the first ground mentioned, and a *venire facias de novo* awarded.