## Young *versus* Leedom.

1. An owner laid out land in town lots and streets; one of these streets being a public road. *Held*, that a purchaser of a lot would have the right to drain his lot upon the road.

2. In an action for obstructing the flow of water from the plaintiff's lot, the court charged that he could recover if the defendant put into the street an obstruction which caused a greater quantity of water in times of rain to stand on plaintiff's lot than before, but added, "this would not be true if the embankment only obstructed in cases of great and extraordinary floods, which are extraordinary and out of the course of nature." *Held* to be correct.

January 16th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county :* No. 119, to July Term 1870.

This was an action on the case for nuisance, brought to November Term 1869, by Godfrey M. Young against Andrew S. Leedom.

The declaration recited that the plaintiff was the owner of a lot of land, with a carpenter shop and dwelling, in the township of Upper Merion, which said carpenter shop contained a valuable stock of carpenter tools, and whereas before the committing of the grievances hereinafter mentioned the water caused by rains had always been used to run from the aforesaid lot and buildings down

[*Young v.* Leedom.]

·a certain street or way situate between the said lot and a certain lot of the defendant. Nevertheless the said defendant, &c., did erect in and upon the said street or way, a certain dam and cause- way, by means whereof the flow of the water caused by rains was impeded, and obstructed and caused to flow back upon the said lot and carpenter shop of the said plaintiff, by reason of which the said lot and carpenter shop were overflowed, &c., and the said lots to the value of one thousand dollars, were greatly injured and destroyed, whereby the said plaintiff the whole benefit and profit of the said lot and carpenter shop for a long time, &c., totally hath lost, and the said tools were rendered valueless and totally lost to the said plaintiff.

William Davis was the owner of a farm of about 100 acres in Upper Merion township, Montgomery county, situate on the Schuylkill river. A public road was laid out through it on the side next to the river, called the "River road." Before that road was made the land came down to a flat; there was a considerable declination in the land towards the river, over which the water naturally flowed; the flow was arrested by constructing the road, under which a culvert was made.

About March 1865, he laid out a field of about four acres next to the River road in building lots. On the 8th April of that year he sold and conveyed six contiguous lots to the plaintiff, the deed stating them by their numbers "on a plan of lots laid out by William Davis on the 29th of March 1865." These lots had their front on the River road, and were bounded on the south-east by a 25 feet alley called George street. After his purchase, the plaintiff erected a carpenter shop and dwelling-house on his lot; the shop was about 26 feet from the River road and fronted on George street.

Afterwards, on the 27th January 1867, Davis sold and conveyed to the defendant lots also fronting on the River road, and sepa- rated from the plaintiff's lots by George street.

The defendant built a dwelling-house and store on his lot, fronting on the River road, with its west side on George street. He filled up George street from his house to the middle of that street, making it correspond in height with the River road.

The allegation of the plaintiff was that this filling up in George street obstructed the natural flow of the water from his lot and produced the injury complained of in his declaration. He gave evidence to sustain his allegations.

The defendant denied that the natural flow of the water from the plaintiff's lot was over defendant's land, or that his filling in George street obstructed the flow of water from plaintiff's lot.

The evidence was conflicting on these points.

The plaintiff asked the court to charge:—

2. If the jury find that the culvert was made by the township

[Young v. Leedom.]

authorities for the purpose of draining the water from the field of which the lots of plaintiff and defendant are part, defendant could not lawfully obstruct the flow of the water from plaintiff's lot to the culvert.

4. The plaintiff would have no right to drain the water from his lot into or upon the "River road."

7. If the jury find from the evidence that the effect of the embankment made by defendant in George street, is to cause a greater quantity of water in times of rains and freshets to stand upon the lot of Young than before, the plaintiff is entitled to a verdict.

The court (Ross, J.) answered these points:—

2. "I decline to affirm this point; the action of the township authorities cannot affect the relative private rights of the parties to this suit."

4. "I decline to answer this point, it not being material to this issue."

7. "This is true; but the freshets and rains must be those usual, ordinary and to be expected rains and freshets, as defined in the general charge."

The court further charged:—

* * * "If you find that the effect of the defendant's embankment on George street, is to cause a greater quantity of water to stand upon the lot of the plaintiff in times of ordinary rains and freshets, even though it does not produce this result, except at those periods, then the embankment is an obstruction, and, if the right of drainage be in the plaintiff, he would be entitled to your verdict. [The defendant is responsible for all flooding, and the consequences of all obstructions which his embankment may do and entail upon his neighbor, in times of the ordinary, usual and expected freshets. It is proper to say, however, in this connection, that this would not be true, if the embankment only obstructed in cases of great and extraordinary floods, which are *extraordinary* and out of the course of nature: and which like other inevitable calamities that are *Actus Dei,* are to be borne without complaint."] * * *

The verdict was for the defendant.

The plaintiff took out a writ of error, and assigned for error the answers to the points and the portion of the charge in brackets.

*G. R. Fox,* for plaintiff in error.—The culvert was a lawful appertenance to Davis's field, and it passed as an appertenance to the plaintiff: Martin v. Riddle, 2 Casey 415; Kauffman v. Griesemer, Id. 407; Keiffer v. Imhoff, Id. 438. Water cannot be turned upon a road until the authorities have provided the means for carrying it away: Martin v. Riddle, *supra.*

17 P. F. SMITH—23

[Young *v.* Leedom.]

*J. Boyd,* for defendant in error, cited Bentz *v.* Armstrong, 8 W. & S. 41.

The opinion of the court was delivered, March 13th 1871, by

READ, J.—William Davis was the owner of over 100 acres of land in Upper Merion township, Montgomery county, and on the 25th day of March 1865, laid out four acres of it, fronting on a public road, called the River road, in building lots, bounding them on streets and alleys. The latter he dedicated to public use, and since that time has sold ninety of these lots, upon which there have been erected some sixty-five buildings. This is the town of West Conshohocken.

Among others, he sold and conveyed to the plaintiff, on the 8th of April 1865, "lots numbered 11, 12, 13, 14, 15 and 16, according to a plan of lots laid out by said William Davis, Sr., on the 25th day of March 1865." Lot No. 11 fronts on the River road, and is bounded on the south-east by a twenty-five foot street, called George street; on this lot the plaintiff erected a frame carpenter shop. George street was laid out at right angles to the public highway called the River road, which is thirty-three feet wide.

In June 1867, William Davis, Sr., sold and conveyed lots fronting on the River road, and on the opposite side of George street, to the defendant, who on the 8th of July 1868, commenced the erection thereon of a very large and expensive storehouse and dwelling. These lots are Nos. 9 and 10, and are forty feet by one hundred and fifty-three feet deep. These lots and the plaintiff's lots all running back to a twenty-foot alley, parallel to the river road, and crossing George street. The defendant filled up his half of George street, but the plaintiff did nothing to his half.

On the 20th November 1868, the plaintiff commenced this suit against the defendant, and in his declaration avers and alleges that the water caused by rains had always been used to run from the aforesaid lot (No. 11) and buildings down a certain street or way (George street), situate between the said lot and a certain lot of the defendant; and the grievance complained of is, that the defendant "did erect in and upon the said street or way a certain dam and causeway, by means whereof the flow of the water caused by rains was impeded and obstructed, and caused to flow back upon the said lot and carpenter shop," by reason of which obstruction and flowing back of the said water the said lot and carpenter shop were overflowed, submerged and drowned, &c.

In his charge to the jury, the learned judge submitted two propositions which the plaintiff must establish in order to recover:—

1. That he had an easement or right to drain the surface-water at the place where the alleged obstruction was erected by the defendant, as claimed in the declaration.

[Young *v.* Leedom.]

2. That the defendant by his obstructions such as are alleged in the declaration, has, however slightly, obstructed or interfered with that right or easement.

The jury having found a verdict for the defendant, have established, either that there was no such easement in the plaintiff, or that the defendant had not in any manner interfered with it. The charge is very judicious, and there is only one error assigned to it, which we will consider presently. The 1st, 3d, 5th, 6th and 7th points of the plaintiff were affirmed, the last with a modification. The 4th point was declined as not material to the issue, and it would have been error to have affirmed it, as the plaintiff would have a right to drain the water into the public road, forming in the present case practically one of the streets of the town.

The 2d point was declined upon the proper ground that the action of the township authorities could not affect the relative rights of the parties, and which had been fully stated by the court in affirming the other points.

This leaves the 3d and 4th errors, which are identical, being a portion of the general charge repeated in the answer to the 7th point. "It is proper to say in this connection, that this would not be true if the embankment only obstructed in cases of great and *extraordinary floods, which are extraordinary and out of the course of nature*, and which, like other inevitable calamities that are *actus Dei*, are to be borne without complaint." This is certainly good law, and if it were not, it was entirely immaterial in the present case, as there was no evidence whatever of any great or extraordinary floods, out of the course of nature.

The plaintiff purchased lots in a village regularly planned and mapped. The dimensions of the lots with the streets and alleys, and their respective widths all given, so that the purchaser knew exactly what he bought. The plaintiff's lot fronted on the River road and ran back one hundred and fifty-three feet to a twenty-foot alley, and was bounded on the south-east by George street. The plaintiff placed his shop three feet below the level of the highway, and the consequence was that the water sought the lowest ground, which was the shop. The remarks of Judge Kennedy in Bentz *v.* Armstrong, 8 W. & S. 40, are worthy of notice.

Judgment affirmed.