LOUIS F. VANDERWIELE, Appellant, v. JAMES R. TAYLOR, Respondent.

The owner of a city lot may improve and fill it up, or may, if he desires to build, construct walls so as to protect his lot against the surface water from an adjoining higher lot, but the owner of the latter cannot be compelled to improve or drain his lot for the benefit of the former; so long as he leaves his lot in its natural condition his neighbors cannot complain of the surface water.

The parties owned adjoining lots in the city of New York. Defendant's land descended towards plaintiff's, so that the surface water flowed from the former to the latter. Plaintiff built upon his land, the wall of the building being upon the line between the lots; this dammed up the surface water which soaked through the wall into the cellar of the building. Defendant had done nothing upon his lot to interfere with the natural flow of the water. There was a sewer in the street adjoining the lots. In an action to recover for the damage caused by the water, *held*, that

defendant was not bound to drain his lot or connect it with the sewer; and that plaintiff could not recover.

It did not appear that the defendant knew that the water was doing injury. *Held,* that even if he was required to protect plaintiff from injury the latter was bound to give notice that the water was injuring or was liable to injure him; he could not wait until the damage was done and then complain.

*Rylands* v. *Fletcher* (L. R., 3 E. & I. Appeals, 330) and *Smith* v. *Fletcher* (3 Eng. R. [Moak's notes], 422) distinguished.

(Argued January 13, 1875; decided May term, 1875.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict, and granting a new trial.

This action was brought to recover damages alleged to have been caused by defendant's permitting water to accumulate on his premises, and from thence to flow into plaintiff's cellar, causing injury to the wall of his building.

The following undisputed facts appeared upon the trial: The plaintiff owned two lots in the city of New York, situated on the northerly side of a street, and the defendant owned five lots next, westerly, on the same side of the street. Prior to the winter of 1867, the lots were all vacant and unimproved. The street had been graded and paved, and the sidewalks therein flagged, and a sewer had been constructed therein. Defendant's lots descended towards plaintiff's, so that at the west line of plaintiff's lots the land was several feet lower than the sidewalk. Before the winter of 1867, the surface water on defendant's lots, caused by rains, flowed down to plaintiff's lots, and some of it soaked away upon them, and some upon defendant's lots. In the winter of 1867, and the spring of 1868, plaintiff erected upon his lots a large brick building, placing the west wall thereof on the west line of his lots. After that, the water, in the times of rains, would sometimes flow down to the west wall of the building and would then be dammed up, and would flow through the wall and soak through the ground into the

cellar of the building, and this action of the water caused the walls of the building to settle, and otherwise injured them. The neighbors had thrown garbage and ashes upon the front side of the lot, near to plaintiff's west wall, which may have had some tendency to keep the water which flowed down to the wall from wasting away under the sidewalk and under the street. There was no proof that defendant knew that the water from his lot did or could do any injury to plaintiff's building, although he knew the condition of his own lot, and to some extent the condition of the surface water thereon.

Defendant's counsel moved for a dismissal of the complaint, on the grounds that there was no evidence of any nuisance caused by him, or of any negligence on his part in causing or permitting an accumulation of water on his premises; and that the evidence showed he was not aware that the water had collected there or was injuring plaintiff. The motion was denied, and defendant's counsel duly excepted.

*Abel Crook* for the appellant. Defendant cannot escape liability upon any theory of negligence of plaintiff in the erection of his building, or that other causes or persons contributed to the injury. (*Davis* v. *Mann*, 10 M. & W., 545; *Bridge* v. *G. J. R. R. Co.*, 3 id., 244; *Butterfield* v. *Forrester*, 11 East, 60; *Short* v. *Knapp*, 2 Daly, 150, and note; *Ernst* v. *H. R. R. R. Co.*, 35 N. Y., 26.) If plaintiff's negligence did not contribute to the injury, defendant cannot excuse his negligence, which caused the injury. (*Haley* v. *Earle*, 30 N. Y., 208; *Savage* v. *Corn Ex. Ins. Co.*, 36 id., 655; *McCahill* v. *Kipp*, 2 E. D. S., 413; *Brehm* v. *Gt. W. R. R. Co.*, 34 Barb., 273; *Chapman* v. *N. H. R. R. Co.*, 19 N. Y., 341; *Colgrove* v. *N. Y. and N. H. R. R. Co.*, 20 id., 462; *Sheridan* v. *Brooklyn, etc., R. R. Co.*, 36 id., 40; *Webster* v. *Harlem R. R. Co.*, 38 id., 260; *Barrett* v. *Third Ave. R. R. Co.*, 45 id., 628; *Pollett* v. *Long*, 10 Alb. L. J., 333.) The question of negligence was one of fact. (*Maloy* v. *N. Y. C. R. R. Co.*, 58 Barb., 182; *Wolfkiel* v. *Sixth Ave. R. R. Co.*, 38 N. Y., 49; *Bateman* v. *Ruth*, 3 Daly, 378; *Wooden* v. *Austin*,

51 Barb., 9; *Bellows* v. *Sackett*, 15 id., 102.) As defendant, after knowledge of the existence of the overflow, did not abate it, he was chargeable with its natural result. (*Lambert* v. *Bessy*, Sir J. Raym., 422; *Hay* v. *Cohoes Co.*, 2 Comst., 162; *Rylands* v. *Fletcher*, L. R., 3 E. & I. Apps., 330; *Smith* v. *Fletcher*, 3 Eng. R. [Moak's, 1872], 422; *Beard* v. *Murphy*, 37 Vt., 99; *Wilson* v. *City of Bedford*, 108 Mass., 261; *Gardner* v. *Heartt*, 2 Barb., 165; *Bellows* v. *Sackett*, 15 id., 101; *Radcliff* v. *Mayor, etc.*, 4 Comst., 203; *Brown* v. *C. and S. R. R. Co.*, 12 N. Y., 494; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id., 42; *Goodale* v. *Tuttle*, 29 id., 467; *Pixley* v. *Clark*, 35 id., 531; *Thomas* v. *Kenyon*, 1 Daly, 132; *Kauffman* v. *Griesmer*, 26 Penn., 407; *Martin* v. *Riddle*, 26 id., 415; *Butler* v. *Peck*, 16 Ohio, 334; *Gormley* v. *Sanford*, 42 Ill., 162; *Gillham* v. *Mad R. R. Co.*, 49 id., 484; *Livingston* v. *McDonald*, 21 Iowa, 174; *Pettigrew* v. *Vil. of Evansville*, 25 Wis., 223; *Ogburn* v. *Connor*, 46 Cal., 346.)

*Osborn E. Bright* for the respondent. Defendant's dominion over his lots was unlimited to the point where a particular use of them would become a nuisance. (*Fisher* v. *Clark*, 41 Barb., 329; *Goodale* v. *Tuttle*, 29 N. Y., 459.) Defendant owed plaintiff no duty. (*Fletcher* v. *Rylands*, L. R., 3 E. & I. Apps., 422; *Smith* v. *Fletcher*, L. R., 7 Exch., 305; *Smith* v. *Kenrick*, 7 C. R., 564; *Baird* v. *Williamson*, 15 C. B. [N. S.], 376; *Thomas* v. *Kenyon*, 1 Daly, 132; *Bellows* v. *Sackett*, 15 Barb., 96; *Brown* v. *C. and S. R. R. Co.*, 12 N. Y., 486; *Hay* v. *Cohoes Co.*, 2 Comst., 159; *Radcliff* v. *Mayor, etc.*, 4 id., 195; *Pixley* v. *Clark*, 35 N. Y., 520; *Waffle* v. *N. Y. C. R. R. Co.*, 53 id., 11.)

EARL, C. The plaintiff built a house upon his lot adjacent to defendant's lot situated westerly; and defendant's lot descended easterly to plaintiff's lot. While both lots were vacant and in this condition, plaintiff erected a brick house upon his lot, placing the westerly wall thereof upon the westerly line of his lot. The surface water which in the times of rains flowed upon defendant's lot naturally flowed down to the wall of

plaintiff's house and there was obstructed and dammed up, and thus did the damage complained of. Defendant had done nothing upon his lot to interfere with the natural flow of the surface water, and certainly no more water flowed down to and upon plaintiffs lot than had before the time of the injury been accustomed to flow there.

The claim on the part of the plaintiff is, that defendant was bound to drain his lot or connect it with the sewer in the street so as to prevent injury to plaintiff's house from the surface water upon his lot. This is certainly an extraordinary claim, and has no support in any authority which has come to my notice. The owners of two adjacent fields, one of which is higher than the other, have correlative duties and rights. The owner of the higher one has the right to have the surface water flow naturally upon the lower one, but he has no right to dam it up and throw it with unusual violence or unusual quantities upon the lower field. The owner of the lower field is bound to receive the surface water from the higher one, and has no right to dam it up and throw it back upon the higher one. (Domat [Cush. ed.], 616.) The lower field is subject to a natural servitude to receive the surface water which flows on to a lower level from a higher one. (Wash. on Eas., 15.)

It may be stated, as a general rule, that when the situation of two adjoining fields is such that the water, falling or collected by melting snows upon one, naturally descends upon the other, it must be suffered by the owner of the lower one to be discharged upon his land, if desired, by the owner of the upper one. (Id., 353; *Kauffman* v. *Griesemer*, 26 Penn. St., 407; *Martin* v. *Riddle*, id., 415.) But this general rule must be somewhat qualified. The owner of the higher field is not obliged in all cases to permit the surface water to flow upon the lower field. He has the right to level, grade, drain and improve his lands ; and if by so doing the surface water is retained upon his own land, or dispersed in other directions so as not to flow upon the lower adjacent field, the owner of the latter field has no remedy against him. So the owner of

the lower field has the right, in the improvement thereof, to fill the same up, and if by so doing the surface water of the higher field is prevented from flowing thereon, the owner of the latter is without remedy. In *Goodale* v. *Tuttle* (29 N. Y., 467), DENIO, Ch. J., says : " One is not obliged to excavate ditches or construct sewers on his own land for the purpose of draining the low and marshy lands of an adjoining proprietor ; and in respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soil for its amelioration, and his own advantage, because his neighbor's land is so situated as to be incommoded by it. Such a doctrine would militate against the well-settled rule that the owner of land has full dominion over the whole space above and below the surface."

It is undoubtedly true that the rule which would be applicable to surface water in agricultural districts must be somewhat modified in its application to city lots. Such lots are useful only for building, and the owners must be permitted to improve them for building purposes. The owner of a lower lot who desires to build must be permitted to fill it up, to ditch it, to construct walls, or to build his house so as to protect his lot against the surface water of the adjoining lot. If he thus prevents the flow of the surface water upon his lot, the owner of the higher lot has no cause of action against him. But even in a city there is no principle of the common law which requires one lot owner to improve or drain his lot for the benefit of another. So long as he leaves it in its natural condition, his neighbors cannot complain of the flow of the surface water. While this rule recognizes and upholds proprietary rights, it can work no injustice. If the surface water on any lot is a real nuisance, there is ample power in the city authorities, for the purposes of health or public convenience, to abate it. They may require that the lot owner shall drain his lot or connect it with a public sewer. This may be done as a governmental regulation. But the owner of the lower lot in such case has no right which has been

invaded, and he has no standing, as owner of the lower lot merely, which enables him to sue the owner of the higher lot. (*Bently* v. *Armstrong*, 8 Watts & S., 40; Wash. Eas., 358.)

In this case the defendant neither caused nor permitted, within the meaning of the law, a nuisance upon his premises, by the accumulation of water thereon. There is no evidence that it was a nuisance in any proper sense. The water, at times, simply injured plaintiff's building. If it was in any sense a nuisance, it was one caused by the plaintiff damming up and obstructing the flow of the water by the wall of his building. He had the right to erect his building, but he erected it with a knowledge of all the circumstances, and unless he could induce the city, in its governmental capacity, to interfere, he was bound to protect his building against the surface water, or take the consequences. The maxim, *sic utere tuo*, etc., does not apply to such a case.

That maxim requires one so to use his lands as not to injure his neighbor's, and has many illustrations in the books, but it has never yet been applied to such a case as this. It does not require one lot owner so to improve his lot that his neighbor can make the most advantageous use of his, or be protected against its natural disadvantages.

It must constantly be borne in mind that defendant had done nothing to increase or interfere with the flow of water from his lot, and hence this case is entirely unlike *Rylands* v. *Fletcher* (3 H. of L. [E. and I. Appeals], 330), and *Smith* v. *Fletcher* (3 Eng. Reps., 305), and like cases, where the owners of lands brought or gathered upon their land unusual quantities of water, which escaped and caused injury. Hence I conclude defendant was not bound, from any facts so far considered, to drain his lot or connect it with the sewer in the street.

The case states that plaintiff offered in evidence a city ordinance, but it does not state that it was received in evidence, and it is not printed. Hence we do not know what it is, and can give it no force in the disposition of this case.

But there is another view that would furnish a serious obstacle to plaintiff's recovery. He gave no proof that defend-

ant knew that the water from his lot was injuring his building. Defendant had done nothing to cause the flow of the water. That flowed naturally, as it had always been accustomed to flow. The plaintiff made no complaint to defendant that it was doing him any damage. If the defendant was bound to protect him against the damage, he was at least bound to give the defendant notice, so that he could remedy the mischief. He could not wait until the damage was done, and then for the first time complain that defendant did wrong in permiting the water to flow.

Plaintiff certainly could not require active vigilance of the defendant to foresee the damage the water might do, and guard against it. If the defendant is in any way in default, it is simply because he knew the dangerous nature of the water flow, that it was liable to injure, or was injuring the plaintiff, and negligently ommitted a duty he owed to protect him against it. He owed no duty until he was made aware that the water entered plaintiff's cellar, or was injuring him, or was liable to injure him. (*Losee* v. *Buchanan* 51 N. Y., 476.)

It appeared in evidence that the defendant's lots were vacant lots, and that the neighbors threw garbage into them next to the street, on the easterly side of the lots. So far as this was done, the natural condition of the surface of defendant's lot was changed. The plaintiff knew this, but never in any way complained of it to the defendant, so as to give him an opportunity to remedy the mischief. But there was no proof that this caused any additional flow of water against plaintiff's building, and there was no proof sufficient to submit to a jury that it prevented the flow of the water from the lots under the sidewalk and the streets.

I am therefore of opinion, upon the undisputed facts of the case, that the plaintiff ought to have been nonsuited, and hence that the order of the General Term should be affirmed, and judgment absolute ordered against the plaintiff, with costs.

All concur, except DWIGHT, C., not sitting.

Order affirmed, and judgment accordingly.