Mr. Justice Wylie
delivered the opinion of the court:
The company, defendant in this case, was incorporated by act of the State of Maryland passed the 6th of May, 1853, but no act of Congress was obtained allowing the extension of the road into the District of Columbia until the passage of *522 the act approved" February 5, 1867. (14 Stats, at L., 187.) By the third section of the act it was provided: “ That whenever the said company, in the construction of a railroad into or withiu the said District, as authorized by this act, shall find it necessary to cross or intersect any established road, street, or other way, it shall be the duty of said company so to construct the said railroad across such established road, street, or other way as not to impede the passage or transportation of persons pr property along the same; and when it shall be necessary to pass the said railroad through the land of any individual within the said'District, it shall also be the duty of said company to provide for such individual proper wagon-ways across the said railroad from one part of his land to another; but nothing herein contained shall be so construed as to authorize entry by said company upon any lot or square, or upon any part of any lot or square, owned by the United States within the limits of the city of Washington, for the purpose of locating or constructing the said road, or of excavating the same, or for the purpose of taking therefrom any materials, or for any other purpose or uses whatsoever; but the said company, in passing into the District aforesaid and constructing the said road within the same, shall enter the city of Washington at such place, and shall pass along such public street or alley to such point or terminus within the said city, as may be allowed-by Congress upon presentation of survey and map of proposed location of said road : Provided, That the level of said road within said city shall conform to the present gradation of the streets, unless Congress shall authorize a different level.”
By an act of Congress approved March 18, 1869, two routes were designated, by either of which the company was authorized to enter and construct its road within the city, of Washington. ’
By another act approved March 25, 1870, (16 Stats, at Large, 78,) this option was extended to a third route, and by this route the road was subsequently constructed, passing along K street and in front of the property of the plaintiff, *523 lying between Third street east and Canal street, in squares 767 aud 768. This third route differed but little from one of those which had been designated by the act of March 18, 1869, and which was generally known as the Virginia avenue and K street route.
After this came the ordinance of the late corporation of Washington, passed May 31, 1870, designating the K street route for the road, with some further but not inconsistent provisions, according to a certain plan aud profile of the road which had been prepared by the company.
This ordinance contains the further provision that the company shall “ be permitted to change the grade of certain streets at certain points, as designated on said profile and plan, so thát the grades shall conform to the blue figures on said plan, and shall he so laid down upon the books in the city surveyor’s office as the established grades.”
A proviso required that “ whenever sewers, gutters, curbstones, or sidewalks, or flag footways, gas or water pipes, are disturbed or moved by the said company, the same shall be rebuilt in a proper and satisfactory manner at the expense of the said company, and without cost or loss to any citizen or to the corporation of Washington.”
And this ordinance seems to have been ratified by act of Congress approved May 21, 1872, entitled “An act to confirm the action of the board of aldermen and common council of the city of Washington designating a depot site for the Baltimore and Potomac Railroad Company, and for other purposes.”
Under authority thus conferred, the company built its road in front of plaintiff’s lots, at an elevation of two feet above the original grade, such elevation being in conformity to the new grade.
The first count in the declaration avers that damages had been sustained by the plaintiff from two causes: first, that access to the front of his property had been rendered difficult by the elevation of the road in front of the property; and second, that, in consequence of the construction of the *524 road at said elevation, the water which otherwise would have remained upon the street, or flowed off in a different direction, had been turned aside, overflowing his lots and filling the basements of his houses. It is not averred in the declaration, nor was there any evidence to show the existence of any spring of water or water-course upon or near the property in question. The overflow complained of was occasional, and the result of rains when these were heavy.
It is manifest that both these grounds of complaint were results caused by the construction of the road in the manner authorized by law. The fee-simple of the street belonged to the United States, and the road was built according to a grade which had been prescribed both by the city authorities and by. Congress. It was a lawful rohd, therefore, and the consequences complained of would have been the same had a road of any other description been so constructed.
In all such cases the damages must be borne by the lot-owners. They buy their property with a knowledge of that risk. If they would avoid damage from the overflow of water, they must fill up their lots; and, generally, they are not losers by the change, as the property is enhanced in value. Even special injury in such a case is no ground for damages; as, if a plaintiff were to bring his action for having fallen down and broken a limb in crossing the tracks, this would not entitle him to recover, for the reason that the road was there by authority of law. In The Eleanor, 2 Wheat., 358, it is said by the Supreme Court that “ whatever may be the injury that casually results to an individual from the act of another while pursuing the reasonable exercise of an established right, it is his misfortune. The law pronounces it damnum absque injuria, and the individual from whose act it proceeds is liable neither at law nor in the forum of conscience.” “ In cases of this nature a loss or damage is, indeed, sustained by the plaintiff, but it results from an act done by another free and responsible being which is neither unjust nor illegal.” (Broom’s Legal Maxims, 151.)
Had the road in question been constructed without au *525 thority of law, or had it not been constructed in the manner prescribed by law, and special injury had thereby' been done to the plaintiff or his property, this would have been good ground for damages; but in the present instance no such violation of duty on the part of the defendant has been alleged in the declaration or appears in the evidence.
The obligations which the defendant was under in this respect are found in the proviso to the city ordinance, in these words: “ Whenever sewers, gutters, curbstones, or sidewalks, or flag footways, gas or water pipes, are disturbed or moved by the said company, the same shall be rebuilt in a proper and satisfactory manner at the expense of the said railroad company, and without cost or loss to any citizen or to the corporation of Washington.”
The declaration in the present case, however, contains no averment that defendant had been derelict in duty in any of these respects, nor does the evidence in the record show such neglect.
Under this first couut, plaintiff’s cause of action has no other foundation than certain injuries to his property alleged to have resulted from the lawful construction of'the road by the defendant.
We now proceed to consider plaintiff’s case as set out in the second count of his declaration.
By the third section of the act of February 5, 1867, it was declared “ that whenever the said company, in the construction of a railroad into or within the said District, as authoi’ized by this act, shall find it necessary to cross or intersect any established road, street, or other way, it shall be the duty of said company so to construct the said railroad across such established road, street, or other way as not to impede the passage or transportation of persons or property along the same.”
The second count charges that defendant had not observed this injunction of the law by its failure to construct proper crossings at the intersections of its road with Third and Canal streets respectively, in consequence whereof the plaintiff' “ has *526 suffered damages and been greatly injured in his said estate, the same being greatly diminished in value thereby, and has been injured in the use and enjoyment of his said property, as hereinbefore alleged and set forth; and that he and his said property have been greatly damaged thereby, to wit, in the sum of five thousand dollars.”
Here is a violation of law plainly alleged. The injury, however, was one which affected the whole public as well as the plaintiff', the latter no otherwise nor in any greater degree than others, except that his inconvenience was necessarily greater than theirs, in consequence of the location of his property at the junction of the streets.
The failure of defendant to construct proper crossings at those points is alleged to have been an injury to the whole public, as the count avers that “ this portion of their said road is neither safe nor convenient for the passage and transportation of persons and property across and along the same.”
Had the plaintiff' alleged any particular and special injury, either to himself or his property, in consequence of the nuisauce, and proved his case, he would have been entitled to damages; but on that point the only allegation is that his property at that place had been greatly diminished in value, and that he had been injured in its use and enjoyment “ as hereinbefore set forth.” Now, the damage “ hereinbefore set forth” must refer to the first count of the declaration, and there, as has been shown, the damage alleged was such only as was the inevitable result from the lawful construction of the road. Certainly here is no such special case alleged as can enable the plaintiff' to maintain an action for damages resulting from the existence of a public nuisance. The plaintiff’s inconvenience from this nuisance may have been greater than that of the public generally, but even that is not alleged in this count. On this subject the authorities are very numerous. We adopt the rule as laid down by Chief Justice Shaw in Thayer v. Boston, 19 Pick., 514, as follows: “It is a well-settled rule of law, that if an individual suffer special damage by any unlawful act in obstructing *527 a highway, he shall have his action, although the party doing the act is liable to an indictment. J3ut without such special damage, although the act is unlawful, and although more injurious to one proprietor, on account of his proximity to the highway, than another, still he cannot have an action, because actions would thereby be multiplied indefinitely; but the offender shall be prosecuted by indictment, by which the offense shall be punished and the wrong redressed once for all. What is special damage to sustain the per quod and enable one to have his several actions for an injury common to the whole community, is often a difficult question. It seems to be settled by authorities that it must be something not merely differing in degree, but in kind, from that which must be deemed common to all.” (See Stetson v. Faxon, Id., 147; Proprietors of Quincy Canal Co. v. Newcomb, 7 Metc., 283; Barnard v. Connecticut River Railroad Co., 7 Cush., 510; Smith v. Boston, 7 Cush., 225; Fall River Iron Co. v. Old Colony Railroad Co., 5 Allen, 224; Paine v. Dart, 7 Cow., 609; Wood on Nuisances, secs. 621, 858, 873, 829.)
Since this case was argued, the case of Lynch v. The Mayor of New York has been brought to our attention, as published in “The Albany Law Journal” of March 1,1879. The opinion of the Court of Appeals of New York in this case was delivered by Mr. Justice Earl, and the doctrine held is well stated in the syllabus, as follows: “ The complaint in an action, against a city alleged that the plaintiff was the owner of a lot in a city near a certain avenue; that the defendant caused the grade of such avenue to be raised, but failed to provide any means for carrying off the rain-water, by reason whereof such rain-water flowed from the said avenue upon the plaintiff’s lot to his damage: held, not to state a cause of action. A city has at least the same right to improve its property as a private owner; and so long as the surface water is not collected into a channel, and thrown upon another’s land, the city is not liable.” Vanderwiele v. Taylor, 65 N. Y., 341, and Gannon v. Hargadon, 10 Allen, 106, are cited in the opinion for this doctrine.
*528 We think, therefore, that both the prayers on behalf of the plaintiff ought to have been refused, and that the charge of the court as excepted to was also erroneous.
It is hardly necessary to examine the instructions asked for by the defendant, as, for the most part, they were the converse of the propositions contained in those of the plaintiff, and ought, therefore, we think, to have been granted. One or two of them, perhaps, were objectionable in some respects, but not so in respect of the substantial matters in controversy.
Being of opinion, therefore—
1st. That no one is liable to another in damages for doing with his own whatever he is permitted to do by law; nor is liable in damages for not doing in behalf of another that which he is under no obligation to do; and that if loss happen to another in either of these contingencies, such loss must rest where it has fallen — that it is a case of damnum absque injuria.
2d. That where the injury is the result of a common nuisance, it is not a ground of action for damages unless the plaintiff can prove some injury to himself of a character different in kind from that common injury which he may have sustained with the rest of the public by reason of such nuisance.
3d. Being of opinion, also, that the case made by the present plaintiff, both in his declaration and bis proofs, is faulty in each of these respects, we think the judgment should be reversed and a new trial awarded. It may not be impossible to cure or supply these defects, and for that reason this opportunity is given.