MARTHA I. ASHLEY, as Executrix, etc., of EDWARD E. ASHLEY, Deceased, Plaintiff, *v.* HARRY H. HOLBERT and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Ninth District, June 12, 1933.

*Henry S. Mansfield*, for the plaintiff.

*Davies, Auerbach & Cornell* [*William J. Carr* of counsel], for the defendants.

GENUNG, J.   Plaintiff owns a lot, fifty feet front by one hundred feet in depth, situated on the westerly side of Broadway between

Leyden street and West Two Hundred and Twenty-eighth street, in Manhattan. Defendants' land fronts on Marble Hill avenue and is approximately one hundred twelve feet in width by one hundred feet in depth. The rear lines of both properties are contiguous. Defendants' property is about " thirty to thirty-five feet " above that of plaintiff, and, at the rear line of defendants' land, the drop to plaintiff's land is quite precipitous. The grade of defendants' land slopes downward at about twelve degrees from the street for a depth of one hundred feet.

On March 27, 1932, a severe rainstorm occurred. A large quantity of slag, slate, stone and soil was washed down from defendants' land to that of plaintiff. A metal building used as a garage workshop, situated on plaintiff's land, was demolished.

Plaintiff sues to recover the damage sustained by reason of the demolition of said metal structure and for the loss of rental therefrom.

The owner of an upper tract which *naturally* drains into a lower tract need not ordinarily arrest the natural flow of rainwater or melted snow, or deflect it from the lower tract. (*Vanderwile* v. *Taylor*, 65 N. Y. 341.) The natural progress of such water is toward its own level. One who occupies a lower tract upon which waters from a contiguous upper tract drain, is, of course, situated in a position of relative disadvantage. He may provide a channel for the drainage of the waters entering upon his land from the upper tract, or take such other precautions as will save his land from the consequences of such drainage. If he does not do so, he must abide the consequences of the natural flow or drainage of such waters.

But immunity of the owner of the upper tract ceases when he interferes with the natural drainage (Cf. *Jutte* v. *Hughes*, 67 N. Y. 267), or aggravates the natural consequences thereof. One who dams a stream which drains into the land below may be held to a liability of which he would be free had he allowed the stream to flow unchecked. So, also, one who prevents normal drainage, through seepage into the ground, by spreading a surface of concrete over the soil which normally absorbed rain waters, will be liable to the owner of the lower tract whose land is inundated by the waters so deflected. The owner of the upper tract is not liable if rain water, falling upon the upper tract, carries soil or rock from the upper tract to the tract below, provided that that soil or rock is part of the natural formation of the upper tract. He is liable, if he places other soil or rock in a position where the natural drainage of rain water will carry *that* soil and rock, in addition to the soil and rock which are a natural part of the upper tract, to the tract below, or where the added soil or rock interferes with the normal course of the drainage.

Here, it appears that about six months prior to the particular rainfall, a large quantity of slag and stone had been placed on defend-

ants' land. For plaintiff it was testified that this material weighed about ten tons. A defendant testified that it weighed somewhat less than that. It was claimed by plaintiff that this large mass of material weakened the land beneath it. As to this, there was no actual proof. The proof is adequate, however, that the large quantity of material was placed on defendants' land, that they knew it was there, and that it, or a large part thereof, was carried down by the particular rainwaters to plaintiff's land and building. Had defendants manually thrown the stone and slag upon plaintiff's land and building, the conclusion of liability, whether on the theory of trespass or negligence, would be inescapable. The liability is not different because defendants placed the slag and stone in a position where it could be washed down upon plaintiff's land by rain falling upon defendants' land.

There is no force in the argument that plaintiff was bound to provide and maintain a retaining wall because of excavations made by her on her own land. The excavations in question were of a minor and insignificant nature, reaching a depth of some eight inches. These excavations did not change the topography of the particular property in any essential respect. Subdivision 2 of section 230 of article 12-f of chapter 5 of the New York Code of Ordinances, requiring the erection of a retaining wall to support earth adjoining an excavation, has no application to the situation. Nor was there any proof that the slight excavations so made were a contributing factor to the washout, or bore any causal relation to the damage suffered.

It is also claimed that sections 213 and 214 of article 11 of chapter 5 of the New York Code of Ordinances, relating to the making or repairing of partition fences or retaining walls, control the rights of the parties. Those sections confer a particular remedy. That remedy is not exclusive. It does not exclude the common-law remedy here pursued.

Judgment for plaintiff for $1,000. Counterclaim dismissed.