James D. Hopkins, J.
The plaintiff corporations are the owner and tenant of certain real property located on the westerly side of Route 9-A (also known as Saw Mill River Road) in the Town of Greenburgh. The property is improved for use as a drive-in motion picture theatre, and has been operated for that purpose during the years within the compass of this action. The defendants are the owners of real property located on the easterly side of Route 9-A, improved as a shopping *238 center, and part of the frontage lies opposite to the property owned or occupied by the plaintiffs.
This action was instituted for a permanent injunction restraining the defendants from maintaining a nuisance on their property, arising out of the alleged flooding of surface water on the plaintiffs’ property, created by conditions existing on the defendants’ property, and for money damages claimed to have been sustained by the plaintiffs as a result of such flooding. At the trial and in their brief submitted at the end of the trial, the plaintiffs have not pressed their prayer for injunctive relief, and the question to be resolved is accordingly whether the plaintiffs are entitled to a money judgment.
Under stipulation of the parties, and in the company of their attorneys, the court has viewed both properties which are the subject of the action.
In general, the operative facts are not in dispute. The plaintiffs’ outdoor theatre was completed in 1950; at that time the property on the opposite side of Route 9-A was owned by other than the defendants, and had not been improved as a shopping center. The plaintiffs’ property is lower in elevation and at several points is beloAV the grade of Route 9-A. The defendants’ property, prior to its improvement, rose at a rather steep grade from the highway, then flattened out to a plateau, and again ascended to the east.
In 1957 the defendants began the improvement of their land. The property was graded and a large building erected which is now leased to the Masters Department Store. Around the building Avas constructed a parking area of considerable size, paved Avith black-top. A drainage system, consisting of several catch basins, was installed to carry off surface water. It is the gist of the plaintiffs’ complaint that the grading and paving of the defendants’ property, coupled with the failure of the drainage system to contain the surface Avater, resulted during periods of heavy rainfall in the diversion of huge quantities of Avater into a gulley on the south side of the defendants’ property, and thence on Route 9-A and the plaintiffs’ property. The plaintiffs contend that from the flooding Avhich thus ensued, they incurred considerable damage caused to the installations on their property, and, in addition, suffered a measurable loss of patronage.
Before discussing the principles of law applicable to the relative rights of neighboring landowners with respect to the diffusion of surface water, certain other physical characteristics of the area must be observed. The plaintiffs’ property borders the Saw Mill River on the north and west sides. The Saw Mill *239 River in times of severe rainfall has flooded plaintiffs ’ property; and the plaintiffs constructed a dike in 1955 to prevent further flooding from that source — a safeguard said by the plaintiffs to be effectual until the making of the improvements on the defendants’ property. Moreover, along Route 9-A, on the plaintiffs’ side of the highway, exists a ditch maintained by the State of New York. Connected with the ditch is a culvert, also maintained by the State, crossing Route 9-A and leading to a catch basin on the east side of Route 9-A, likewise maintained by the State. The gully on the south side of the defendants’ property, of which the plaintiffs complain, ends at the catch basin. Although there is some dispute in the testimony concerning the nature and age of the gully, the court finds that it had been in existence before the defendants’ improvements, and that it was the natural outgrowth of surface water running off the defendants’ property.
The ditch above referred to proceeds along the plaintiffs’ property to a point where it empties into a storm sewer maintained by the Town of Greenburgh which runs easterly adjacent to a private street and terminates at the Saw Mill River. The town storm sewer serves to drain a development known as Beaver Hill, lying on the east side of Route 9-A.
It will accordingly be recognized that surrounding plaintiffs’ property, which is located next to the Saw Mill River, the lowest point in the neighborhood, there is a somewhat complex, co-ordinated system of drainage serving the upper land.
The legal doctrines growing out of the reciprocal rights and immunities of landowners in the diffusion and disposition of surface water have emerged from three separate sources; (1) the civil law rule, visiting liability on one casting water on upland neighbors; (2) the reasonable use rule, making liability depend on an unreasonable use of one’s property and (3) the so-called common enemy rule, which considers surface water a nuisance to be repulsed from one’s land by certain allowable means (see annotation, 59 A. L. R. 2d 421). Early in our law it was said that, “ The rule governing the rights of adjacent landowners in the use of their property, seeks an adjustment of conflicting interests through a reconciliation by compromise, each surrendering something of his absolute freedom so that both may live ” (Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co., 140 N. Y. 267, 280, 281 ; see, also, Smith, Reasonable Use of One’s Property as a Justification for Damage to a Neighbor, 17 Col. L. Rev. 383). That general statement, made in a case involving damage arising out of blasting, would appear to adopt the reasonable use rule, which has lately become *240 the guiding principle in New Jersey, instead of the common enemy rule there previously in effect (Armstrong v. Francis Corp., 20 N. J. 320). But, in fact, New York has consistently followed the common enemy rule, and the Court of Appeals has set any doubts to rest by a recent decision (Kossoff v. Rathgeb-Walsh, Inc., 3 N Y 2d 583). There Judge Van Vookhis stated the rule applicable to upper and lower landowners thus (pp. 589-590): “ Both have equal rights to improve their properties, come what may to the surface water, provided, of course, that the improvements are made in good faith to fit the property to some rational use to which it is adapted, and that the water is not drained into the other property by means of pipes or ditches. Where, as here, it is diffused surface water, neither party is prevented from improving his parcel of land regardless of what becomes of the surface water ”.
Judged by these criteria, the defendants’ actions in grading and paving their land cannot form any basis for liability against them on behalf of the plaintiffs, even though the grading resulted in directing surface water toward the plaintiffs’ property, and the paving had the natural and inevitable effect of accelerating the flow (see, also, Bennett v. Cupina, 253 N. Y. 436 ; Barkley v. Wilcox, 86 N. Y. 140 ; Vanderwiele v. Taylor, 65 N. Y. 341 ; Tench v. Highfield Estates, 2 A D 2d 991 ; County of Nassau v. Cherry Valley Estates, 281 App. Div. 692).
The plaintiffs raise other points which they claim create liability against the defendants. First, they urge that the drainage system constructed by the defendants was inadequate and inefficient, so that as a result the water ran off the latter’s land upon Route 9-A and thence on plaintiffs ’ land. However, the natural contour of the land prior to improvement caused surface water to flow upon the lower land, and there was no showing that any greater volume, save as might have been the result of grading and paving, for which the defendants enjoy immunity, under the Kossoff case (supra), was brought about by the defendants’ acts (cf. Board of Educ. v. Town of North Hempstead, 261 App. Div. 1102).
Secondly, the plaintiffs assert that the defendants connected their drainage system with the catch basin maintained by the State and located at the south side of their land, thus increasing the amount of the surface water discharged into the ditch along Route 9-A adjacent to the plaintiffs’ land. The proof is far from satisfactory, nevertheless, that this water was the cause of the flooding of the plaintiffs’ land. As heretofore described, the ditch itself was connected with a storm sewer system maintained by the town which drained another area, as well as with *241 the Saw Mill River itself. When the Saw Mill River rose in response to heavy rainfall to this level of the pipe of the storm sewer, it was testified by the State highway official in authority that the storm sewer, and, therefore, the ditch, would cease functioning and the water spread over land adjacent to the ditch. I do not find, accordingly, that the plaintiffs sustained the burden of proof to establish that the connection of the defendants’ drainage system with the State-maintained catch basin (whether by permit or not) was the cause of the damage suffered by the plaintiffs.
Lastly, the plaintiffs contend that the defendants so graded their land that water was cast into the gully at the south side of their land, and silt and other material were thereby deposited into the State catch basin, resulting in the stoppage of the State drain and the consequent overflow of water upon the plaintiffs’ land. The evidence established, as stated before, that the gully had existed prior to the improvements on the defendants’ land, and that it was not a ditch artificially created by them. Under the rule reaffirmed in Kossoff (supra) the defendants were entitled to grade and pave their land, and if silt was collected from raw soil exposed as a consequence of the improvement and spread through the diffusion of surface water, that in itself would not lay the foundation for liability. In addition, for the reasons expressed with respect to plaintiffs’ claim relative to water collected and discharged by the defendants’ drainage system into the State catch basin, the proof is insufficient to show that the silting resulted in the flooding on plaintiffs’ property.
The complaint is, therefore, dismissed. Submit judgment on notice. This opinion may be treated as the decision of the court, in accordance with section 440 of .the Civil Practice Act.