ALFRED BARKLEY, Appellant, *v.* NELSON WILCOX, Respondent.

Depressions in the soil to which the surface water from adjacent lands naturally finds its way and is discharged into some natural outlet are not thereby made water-courses, nor does the doctrine of dominant and servient tenements apply as between them and the higher lands adjoining

belonging to other owners, so as to give the upper proprietor. the legal
right as an incident of his estate to have such discharge uninterrupted.

As a general rule the lower proprietor may lawfully, when acting in good
faith and for the purpose of improving and cultivating his lands, fill
them in, although by so doing he prevents the passage of the surface
water. thereon, to the injury of the upper proprietor.

The States whose courts have adopted the contrary rule of the civil
law and those which have adopted the rule above st/ ‾ ‾- -- +ʰ⸗t of the
common law, named.

The parties owned adjacent lots on a street near a v       ɹtural
formation of the land was such that surface water fɪ       ɹelting
snows would descend and accumulate in the street i       plaintiff's
lot, and, in times of unusual accumulations, would ɟ       ɹr a natural
depression across defendant's lot and other low land       .ver. Defend-
ant built a house on his lot, filled in the lot and gr       ɪp the sidewalk
in front of it, so as to cut off the flow of the surfaɖ       ɪter, and thereaf-
ter there being an unusually large accumulation iɪ       ɹe street, it flowed
upon plaintiff's premises and into his cellar. In an ʂ ɹtion to recover dam-
ages for the injuries *held*, that defendant was not liable.

(Argued May 6, 1881; decided October 4, 1881.)

*M̶,*

APPEAL from judgment of the General Term of the Su-
preme Court, in the second judicial department, entered upon
an order made December 8, 1879, which affirmed a judgment
in favor of *plaintiff* entered upon . the report of a referee.
(Reported below, 19 Hun, 320.)

This action was brought to recover. damages for injuries al-
leged to have been sustained by the obstruction of the natural
flow of surface water from plaintiff's lot over and across that of
defendant.

The facts are sufficiently stated in the opinion.

*C. E. Cuddeback* for appellant. The decision of the ref-.
eree, which is here conclusive as to the fact, is really and substan-
tially that a water-course exists, and has existed from time imme-
morial. (*Earl* v. *De Hart*, 1 Beasl. 280 ; Angell on Water-
courses, 130 ; Washburn on Easements and Servitudes, 284.) A
land-owner cannot at his will impose an increased burden of sur-
face water upon his neighbor, to such an extent as to virtually
appropriate his premises. *Noonan* v. *City of Albany*, 79 N.
ʸ ͟ ͟175 ; *Byrnes* v. *City of Cohoes*, 67 id. 204 ; *Inman* v. *Tripp*,

11 R. I. 520; *Haskell* v. *City of New Bedford*, 108 Mass. 208; *Att'y-Gen.* v. *Leeds Corporation*, L. R., 5 Ch. App. Cas. 585; *Jutte* v. *Hughes*, 67 N. Y. 268, 272; *Bastable* v. *City of Syracuse*, 72 id. 64; *Ogburn* v. *Connor*, 40 Cal. 346; *Foot* v. *Bronson*, 4 Lans. 51; *Bellows* v. *Sackett*, 15 Barb. 96; *Martin* v. *Riddle*, 26 Penn. St. 415, note; *Kaufman* v. *Griesemer*, id. 407; *Butler* v. *Peck*, 16 Ohio St. 334; Corpus Juris Civilis, book 39, titles 3, 4; *Martin* v. *Jett*, 12 La. 50, citing Code Louisiana, art. 756; Code Napoleon, art. 640; *Livingston* v. *McDonald*, 21 Iowa, 160; *Gormley* v. *Sanford*, 52 Ill. 158; *Gilham* v. *Madison R. R. Co.*, 49 Ill. 484; *Laumier* v. *Francis*, 23 Mo. 181; *Delahoussaye* v. *Judice*, 13 La. Ann. 587; *Hays* v. *Hays*, 19 La. 351; *Barrett* v. *Salisbury Mfg. Co.*, 43 N. H. 569; *Beard* v. *Murphy*, 37 Vt. 99; *Dickinson* v. *Worcester*, 7 Allen, 19, 22; *Nevins* v. *Peoria*, 44 Ill. 502; *Miller* v. *Laubach*, 47 Penn. St. 154; *Inman* v. *Tripp*, 11 R. I. 520; *City of Aurora* v. *Gillett*, 56 Ill. 132; *Pettigrew* v. *Evansville*, 25 Wis. 223; *Ashley* v. *City of Port Huron*, 15 A. L. J. 814.) Even if these lots were in a city or incorporated village, the rules of law would not thereby be changed. Rights of property are as sacred there as elsewhere, and equally protected by the courts. (*Earl* v. *De Hart*, 1 Beas. 260; *Jutte* v. *Hughes*, 67 N. Y. 267; *Bellows* v. *Sackett*, 15 Barb. 96; *Gormley* v. *Sanford*, 52 Ill. 158.)

*J. M. Allerton* for respondent. The defendant had a legal right to improve his land by filling up the low spots. (*Waffle* v. *N. Y. C. R. R. Co.*, 58 Barb. 413; 53 N. Y. 11.) The obstruction of surface water, or an alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom, against one who does not act inconsistent with the due exercise of dominion over his own soil. (*Gannon* v. *Hagadorn*, 10 Allen, 106; Angell on Watercourses, 108; *Wagner* v. *The Long Island R. R. Co.*, 5 T. & C. 163; *Dickinson* v. *City of Worcester*, 7 Allen, 19; *Sweet* v. *Cutts*, 50 N. H. 439; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Branstron* v. *Taylor*, 11 Ex. 369; *Phelps* v. *Nolan*, 72 N. Y. 39;

*Vanderweile* v. *Taylor*, 65 id. 341; *Radcliff, Executor,* v. *Mayor of Brooklyn,* 4 id. 195; *Lynch* v. *Mayor, etc.,* 76 id. 60.)

ANDREWS, J. This is not the case of a natural water-course. A natural water-course, is a natural stream, flowing in a defined bed or channel, with banks and sides, having permanent sources of supply. It is not essential to constitute a water-course, that the flow should be uniform or uninterrupted. The other elements existing, a stream does not lose the character of a natural water-course, because in times of drought, the flow may be diminished, or temporarily suspended. It is sufficient if it is usually a stream of running water. (Angell on Water-courses, § 4; *Luther* v. *The Winnisimmet Co.,* 9 Cush. 171.)

The parties in this case own adjacent lots on a street near a village, but not within the corporate limits. The findings are, that the natural formation of the land was such, that surface water from rains and melting snows, would descend from different directions, and accumulate in the street in front of the plaintiff's lot, in varying quantities according to the nature of the seasons, sometimes extending quite back upon the plaintiff's lot; that in times of unusual amount of rain, or thawing snow, such accumulations, before the grading of the defendant's lot, were accustomed to run off over a natural depression in the surface of the land across the defendant's lot, and thence over the lands of others, to the Neversink river; that when the amount of water was small, it would soak away in the ground; that in 1871, the defendant built a house on his lot, and used the earth excavated in digging the cellar, to improve and better the condition of his lot, by grading and filling up the lot and sidewalk in front of it, about twelve inches, and on a subsequent occasion he filled in several inches more; that in the spring of 1875, there was an unusually large accumulation of water from melting snow and rains in front of, and about the plaintiff's premises, so that the water ran into the cellar of his house, and occasioned serious damage; that the filling in of the defendant's lot, had the effect to increase the accumulation

of water on the plaintiff's lot, and contributed to the injury to his property.

There was no natural water-course over the defendant's lot. The surface water, by reason of the natural features of the ground, and the force of gravity, when it accumulated beyond a certain amount in front of the plaintiff's lot, passed upon, and over the lot of the defendant. The discharge was not constant, or usual, but occasional only. There was no channel or stream, in the usual sense of those terms. In an undulating country, there must always be valleys and depressions, to which water, from rains or snow, will find its way from the hill-sides, and be finally discharged into some natural outlet. But this does not constitute such valleys or depressions, water-courses. Whether, when the premises of adjoining owners are so situated, that surface water falling upon one tenement, naturally descends to and passes over the other, the incidents of a water-course apply to, and govern the rights of the respective parties, so that the owner of the lower tenement may not, even in good faith and for the purpose of improving or building upon his own land, obstruct the flow of such water to the injury of the owner above, is the question to be determined in this case. This question does not seem to have been authoritatively decided in this State. It was referred to by DENIO, Ch. J., in *Goodale* v. *Tuttle* (29 N. Y. 467), where he said : "And in respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land, from filling up the wet and marshy places on his own soil, for its amelioration and his own advantage, because his neighbor's land is so situated, as to be incommoded by it. Such a doctrine would militate against the well-settled rule, that the owner of land has full dominion over the whole space above and below the surface." The case in which these observations were made, did not call for the decision of the question, but they show the opinion of a great judge, upon the point now in judgment. Similar views have been expressed in subsequent cases in this court, although in none of them, it seems, was the question before the court for decision. (*Vanderwiele* v. *Taylor*, 65 N. Y. 341 ; *Lynch* v. *The Mayor*, 76 id. 60.)

The question has been considered by courts in other States, and has been decided in different ways. In some, the doctrine of the civil law, has been adopted as the rule of decision. By that law, the right of drainage of surface waters, as between owners of adjacent lands, of different elevations, is governed by the law of nature. The lower proprietor, is bound to receive the waters which naturally flow from the estate above, provided the industry of man, has not created or increased the servitude. (Corp. Jur. Civ. 39, tit. 3, §§ 2, 3, 4, 5; Domat [Cush. ed.], 616; Code Napoleon, art. 640; Code Louisiana, art. 656.) The courts of Pennsylvania, Illinois, California, and Louisiana, have adopted this rule, and it has been referred to with approval by the courts of Ohio, and Missouri. (*Martin* v. *Riddle*, 26 Penn. St. 415; *Kauffman* v. *Griesemer*, id. 407; *Gillham* v. *Madison Co. R. R. Co.*, 49 Ill. 484; *Gormley* v. *Sanford*, 52 id. 158; *Ogburn* v. *Connor*, 46 Cal. 346; *Delahoussaye* v. *Judice*, 13 La. Ann. 587; *Hays* v. *Hays*, 19 La. 351; *Butler* v. *Peck*, 16 Ohio St. 334; *Laumier* v. *Francis*, 23 Mo. 181.) On the other hand, the courts of Massachusetts, New Jersey, New Hampshire, and Wisconsin, have rejected the doctrine of the civil law, and hold that the relation of dominant and servient tenements, does not by the common law apply between adjoining lands of different owners, so as to give the upper proprietor the legal right, as an incident of his estate, to have the surface water falling on his land, discharged over the land of the lower proprietor, although it naturally finds its way there; and that the lower proprietor may lawfully, for the improvement of his estate and in the course of good husbandry, or to make erections thereon, fill up the low places on his land, although by so doing he obstructs, or prevents, the surface water, from passing thereon from the premises above, to the injury of the upper proprietor. (*Luther* v. *The Winnisimmet Co.*, 9 Cush. 171; *Parks* v. *Newburyport*, 10 Gray, 28; *Dickinson* v. *Worcester*, 7 Allen, 19; *Gannon* v. *Hargadon*, 10 id. 106; *Bowlsby* v. *Speer*, 2 Vroom, 351; *Pettigrew* v. *Evansville*, 25 Wis. 223; *Hoyt* v. *Hudson*, 27 id. 656; *Swett* v. *Cutts*, 50 N. H. 439.) It may be observed that in Pennsylvania, house lots in towns,

and cities, seem to be regarded as not subject to the rule de-
clared in the other cases in that State, in respect to surface drain-
age. (*Bentz* v. *Armstrong*, 8 Watts & S. 40). And in *Liv-
ingston* v. *McDonald* (21 Iowa, 160), the court, in an opin-
ion by DILLON, J., after stating the civil law doctrine, say,
that it may be doubted whether it will be adopted by the com-
mon-law courts of this country, so far as to preclude the lower
owner from making in good faith, improvements, which would
have the effect to prevent the water of the upper estate, from
flowing or passing away. Professor Washburn, states, that the
prevailing doctrine seems to be that if for the purposes of im-
proving and cultivating his land, a land-owner raises or fills it,
so that the water which falls in rain or snow upon an adjacent
owner's land, and which formerly flowed on to the first men-
tioned parcel, is prevented from so doing, to the injury of the
adjacent parcel, the owner of the latter is without remedy, since
the other party has done no more than he had a legal right to
do.  (Wash. on Easements [2d ed.], 431.)

Upon this state of the authorities, we are at liberty to adopt
such rule on the subject, as we may deem most consonant with
the demands of justice, having in view on the one hand indi
vidual rights, and on the other the interests of society at large.
Upon consideration of the question, we are of opinion that
the rule stated by DENIO, Ch. J., in *Goodale* v. *Tuttle*, is the
one best adapted to our condition, and accords with public pol-
icy, while at the same time, it does not deprive the owner of
the upper tenement, of any legal right of property.  The
maxim, *aqua currit et debet currere ut currere solebat*, expresses
the general law, which governs the rights of owners of property
on water-courses.  The owners of land on a water-course, are
not owners of the water which flows in it.  But each owner is
entitled by virtue of his ownership of the soil, to the reasonable
use of the water as it passes his premises, for domestic and
other uses, not inconsistent with a like reasonable use of the
stream, by owners above and below him.  Such use is incident
to his right of property in the soil.  But he cannot divert, or
unreasonably obstruct the passage of the water, to the injury of

other proprietors. These familiar principles, are founded upon the most obvious dictates of natural justice, and public policy. The existence of streams is a permanent provision of nature, open to observation, by every purchaser of land through which they pass. The multiplied uses to which in civilized society, the water of rivers and streams is applied, and the wide injury which may result from an unreasonable interference with the order of nature, forbid an exclusive appropriation by any individual, of the water in a natural water-course, or any unreasonable interruption in the flow. It is said, that the same principle of following the order of nature, should be applied between coterminous proprietors, in determining the right of mere surface drainage. But it is to be observed, that the law has always recognized a wide distinction, between the right of an owner, to deal with surface water falling or collecting on his land, and his right in the water of a natural water-course. In such water, before it leaves his land and becomes part of a definite water-course, the owner of the land is deemed to have an absolute property, and he may appropriate it to his exclusive use, or get rid of it in any way he can, provided only that he does not cast it by drains, or ditches, upon the land of his neighbor ; and he may do this, although by so doing he prevents the water reaching a natural water-course, as it formerly did, thereby occasioning injury to mill-owners, or other proprietors on the stream. So also he may by digging on his own land, intercept the percolating waters which supply his neighbor's spring. Such consequential injury gives no right of action. (*Acton* v. *Blundell,* 12 M. & W. 324; *Rawstron* v. *Taylor*, 11 Exch. 369 ; *Phelps* v. *Nowlen*, 72 N. Y. 39.) Now in these cases, there is an interference with natural laws. But those laws are to be construed in connection with social laws, and the laws of property. The interference in these cases with natural laws, is justified, because the general law of society is, that the owner of land has full dominion over what is above, upon or below the surface, and the owner in doing the acts supposed, is exercising merely a legal right. The owner of wet and spongy land cannot, it is true, by drains or other artificial means, collect the surface water into channels, and discharge it upon the land

of his neighbor to his injury. This is alike the rule of the civil and common law. (Corp. Jur. Civ. 39, tit. 3, §§ 2, 3, 4, 5; *Noonan* v. *City of Albany,* 79 N. Y. 475; *Miller* v. *Laubach,* 47 Penn. St. 154.) But it does not follow, we think, that the owner of land, which is so situated that the surface waters from the lands above, naturally descend upon and pass over it, may not in good faith, and for the purpose of building upon or improving his land, fill or grade it, although thereby the water is prevented from reaching, it, and is retained upon the lands above. There is a manifest distinction between casting water upon another's land, and preventing the flow of surface water upon your own. Society has an interest in the cultivation and improvement of lands, and in the reclamation of waste lands. It is also for the public interest that improvements shall be made, and that towns and cities shall be built. To adopt the principle that the law of nature must be observed in respect to surface drainage, would, we think, place undue restriction upon industry, and enterprise, and the control by an owner of his property. Of course in some cases the opposite principle, may cause injury to the upper proprietor. But the question should, we think, be determined largely upon considerations of public policy, and general utility. Which rule will on the whole, best subserve the public interests, and is most reasonable in practice? For the reasons stated, we think the rule of the civil law should not be adopted in this State. The case before us is an illustration of the impolicy of following it. Several house lots, (substantially village lots) are crossed by the depression. They must remain unimproved, if the right claimed by the plaintiff exists. It is better, we think, to establish a rule which will permit the reclamation and improvement of low and waste lands, to one which will impose upon them a perpetual servitude, for the purpose of drainage, for the benefit of upper proprietors. We do not intend to say, that there may not be cases which, owing to special conditions, and circumstances, should be exceptions to the general rule declared. But this case is within it, and we think the judgment below should be affirmed.

All concur.

Judgment affirmed.