LYDIA A. VERNUM, APPELLANT, *v.* ANDREW A. WHEELER, RESPONDENT.

| 35 | 53 |
| 125a | 356 |
| 35 | 53 |
| 75 | 424 |

*Water-course — one changing it and discharging the water upon the land of a neighbor is liable for the damages — a person cannot concentrate the surface water upon his land at a point from which it is discharged underground upon adjoining land.*

A portion of the defendant's farm, which was north of and higher than the plaintiff's farm, was low and swampy, and at times a pond formed thereon, which discharged its surplus waters to the west and not upon the plaintiff's land, from which it was separated by a high ridge impenetrable to water. The defendant dug a ditch through this ridge which drained the marsh and pond and discharged the waters thereof upon his own land at a point where it was so gravelly that the water was immediately taken up and transmitted under ground to the plaintiff's land, some thirty feet below, where it came to the surface and caused damage to the plaintiff. Evidence was given upon the trial tending to show that two natural streams of water flowed into the marsh and pond upon the defendant's land.

*Held,* that if the marsh or pond was partially fed by the said natural streams the defendant was liable for any damages that might be occasioned by his wrongful turning of the water thereof upon the plaintiff's land.

That even if the pond and marsh consisted wholly of surface water the defendant had no right to collect it in a ditch and discharge it at such a place and in such a manner as that it would naturally and necessarily, although under the surface of the ground, flow upon the plaintiff's land to his injury.

APPEAL from a judgment in favor of the defendant, entered upon a verdict directed at the circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*John C. McCartin,* for the appellant.

*O'Brien & Emerson,* for the respondent.

BOARDMAN, J. :

This action was brought to recover damages for the wrongful diversion and discharge of water by the defendant upon plaintiff's land. A verdict was ordered for defendant.

The evidence tends to show the following facts : Defendant is owner of a farm north of and higher than plaintiff's farm. There was a low and swampy part of defendant's land, sometimes a pond into which two streams ran and where surface water also collected. This swamp naturally discharged its surplus water to the west, and

not upon plaintiff's land. It was separated from plaintiff's land by high ground which was impenetrable to water. Through this high ground the defendant dug a deep and wide ditch to a point on his own land, some twenty-four rods south of the deepest part of the pond or marsh. Through this ditch the defendant discharged the whole of the waters of said pond and marsh upon his own land, where the same was so gravelly as immediately to take up such water and transmit it under ground down upon the plaintiff's land some thirty rods below where it again came to the surface and caused plaintiff damage. The amount of the discharge was least in the summer season and sometimes very great in the spring and wet seasons. Was defendant's act unlawful? The jury has found that an increased quantity of water was thrown upon plaintiff's premises by reason of this ditch made by defendant; and that plaintiff's premises had been damaged thereby in the sum of $375. But it was not permitted to pass upon the main question whether the defendant had unlawfully diverted waters from their ordinary and natural course, or had discharged such waters in an unusual manner and with unaccustomed force and quantity upon plaintiff's lands.

We think there were other questions of fact that should have been submitted to the jury, and that the case was erroneously taken from it and decided as a question of law. If there were streams running into this pond on defendant's land, he had no right to change their course and pour their waters upon the plaintiff's premises. Many of the witnesses speak of such streams. " There were two running streams leading into and feeding it," plaintiff's pond. " The water of this stream comes from springs on side hills east side of it," etc. " There are banks to this stream. Grass does not grow in the bottom of this stream when it dries up in July or August. Stream starts three miles from the pond. For nearly two miles it is a living stream ; never dries up ; a regular creek ; quite a wide stream ; some places a rod wide ; average three, four or five feet wide of running water, six or eight inches deep ; two or three feet deep when snow-water was running off in the spring sometimes." Here is evidence either showing the existence of streams emptying into defendant's pond, or from which the jury would be warranted in finding that such streams did exist and their waters were turned on plaintiff. "A water-course is a stream of water usually flowing in a definite

channel, having a bed and sides or banks, and usually discharging itself into some other stream or body of water. To constitute a water-course the size of the stream is not important. It may be very small, and the flow of water need not be constant; but it must be something more than the mere surface drainage over the entire face of the tract of land, occasioned by unusual freshets or other extraordinary causes." (*Luther* v. *Winnisimmett Co.*, 9 Cush., 171; *Barkley* v. *Wilcox*, 86 N. Y., 140.) It is a question for a jury, in any given case, whether a water-course exists or not. (Washb. on Easm. [2d ed.], 439, *362, and cases there cited.) If the waters of running streams were turned from their natural course by the defendant, it was an unlawful act, and any person injured thereby could recover of him for all the damages caused by such act.

The learned counsel for the defendant impliedly admits this rule of law, and attempts to evade it by saying that only surface water was within the issue joined by the pleadings, tried and decided by the court. But in this they are in error, as we think. The complaint says, the water from two small brooks or streams, continuously flowing, contributed to the surface water creating the pond which was turned on plaintiff's land. In the answer the defendant admits the existence of a water flow from two small streams "for a short time, spring and fall," into said pond. The character of such streams was a matter of proof on the trial, as we have already seen. It was fairly before the court and jury, and the court erred when it refused to submit to the jury whether the plaintiff was not entitled to recover on the facts proved, and instead thereof directed a verdict for the defendant. The exceptions to each decision are well taken.

If we are correct in what has already been said, a new trial must be had without reference to the other questions involved in the case. But they may and probably will arise, and our opinion may as well be now stated in aid of the court upon such new trial. Assuming that the water in question was *all surface water*, the defendant would have no right, by ditches and artificial channels, to take it from its natural courses and accustomed channels and throw it upon the plaintiff's premises, to her injury. There is no conflict of authorities upon this point. (Washb. on Easm. [2d ed.], 432, 427–431, 439; *Kauffman* v. *Griesemer*, 26 Penn. St., 407, 413; *Miller*

v. *Laubach*, 47 id., 154 ; *Foot* v. *Bronson*, 4 Lans., 47 ; *Noonan* v. *City of Albany*, 79 N. Y., 470.) Even the case relied upon by the learned justice at the circuit (*Barkley* v. *Wilcox*, 86 N. Y., 140) announces the same rule. At page 147 the learned judge says the owner of land is the absolute owner of surface water thereon, and he may " get rid of it in any way he can, provided only that he does not cast it, by drains or ditches, upon the land of his neighbor." And again : " The owner of wet and spongy land cannot, it is true, by drains or other artificial means, collect the surface water into channels and discharge it upon the land of his neighbor, to his injury. This is alike the rule of the civil and common law." (16 Moak's Eng. R., 299, note.)

The rule may be conceded and the defendant may insist that he dug this ditch and discharged this water upon his own premises, twenty rods or more from plaintiff's land, where it sank into the soil and by percolation through the soil reached the plaintiff's premises. Conceding that to be true it does not relieve the defendant from the direct consequences of his own act. It is a legal maxim that we must use our own property in such a manner as not to injure that of another. The case is no different in the cause or the damage, whether the water passes on the surface or through the gravel upon plaintiff's lands. The evidence tends to establish the identity of the water discharged by defendant through his ditch with that coming to the surface upon plaintiff's lands. If it be controverted by evidence then it was for the jury, but the court in its decision assumed the water. was the same. The injury is the direct consequence of the water from defendant's ditch. Though discharged at first upon his own lands it ran of necessity immediately upon plaintiff's land and it is immaterial whether on, or above or below the surface.

If the water which passed through this ditch injured the plaintiff's property the defendant ought to be held responsible therefor upon the facts as they are now presented to us.

The judgment and order denying a new trial must be reversed and a new trial granted, costs to abide the event.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment and order reversed and new trial ordered, costs to abide the event.