J. ERNEST DALY and Another, Claimants, *v.* THE STATE OF NEW
YORK, Defendant.

(Claim No. 18162.)

Court of Claims, May 10, 1928.

State — claims against — claim for injury to crops caused by overflow of
creek — in constructing new Champlain canal, creek was turned into
canal — lands in question were swamp before said change — State is
not liable for overflow caused by heavy storm.

The plaintiffs seek to recover damages to crops caused by the overflow of the
Champlain canal. It appears that the land on which the crops were planted
was a swamp before the construction of the new Champlain canal and that at
that time the creek in question overflowed the land a great deal of the time.
The day before the plaintiffs' land was overflowed there was a very heavy and
severe rain storm and as a result the creek which had been turned into the canal
when it was constructed filled the canal so that it overflowed. Since the plain-
tiffs' land would have been flooded if nothing had been done by the State in the
way of diverting the creek into the canal, the claimants cannot recover because
the work of the State failed to prevent the flooding.

CLAIM by lessees of lands for damage to crops by water alleged
to have been caused by improvement of Champlain canal by the
State.

*Rogers & Sawyer*, for the claimants.

*Albert Ottinger*, Attorney-General [*John L. Campbell*, Deputy Assist-
ant Attorney-General, of counsel], for the defendant.

PARSONS, J. There is very little dispute as to the material facts
in the case except as to the amount of damages, and we are of the
opinion that if the State were liable at all, such damages amounted
to $850, but we consider that question immaterial to our decision.
The question is what caused the damages.

The Champlain canal had been in existence and operation for
about 100 years. In the improvement thereof some years ago,
the location was changed from the old one to the foot of the slope
somewhat westerly and northerly from the old location and a new
excavation therefor made near the slope. The earth for the new
excavation was thrown to the easterly and southerly of the new
excavation and constituted the towpath or embankment somewhat
higher than the adjoining lands to the southerly and easterly.
This stopped the water of the canal from flowing onto the easterly
or southerly portion of the land and made it cultivable, and it
became and was commonly known as muck land, very fertile, and
was used largely for the growing of potatoes and other vegetables.

The claimants herein were the lessees of a tract of land of about fourteen and three-quarters acres lying between the canal and the embankment which carried the tracks of the Delaware and Hudson railroad and was somewhat lower than the towpath of the canal, which towpath had been converted into and was used as the town road.

During the season of 1925 a portion of claimants' tract was planted to potatoes and corn. After the construction of what is commonly known as the new canal, the State, under provisions of law, built some fills, with culverts underneath, across the old canal. Somewhat to the northerly of the new canal a brook known as Haskins brook discharged its waters into the new canal. This brook was a natural waterway and drained quite a considerable watershed and in times of freshets and extraordinary rainfalls was a very turbulent stream and discharged large quantities of water. Before the construction of the canal, these lowlands, a part of which was leased by the claimants, were commonly known as the " swamp." After the construction of the new canal, the waters of said brook were discharged into the canal and ran away through the canal leaving the so-called " swamp " or lowlands comparatively dry and a large portion of it susceptible of cultivation. During the season of 1925 these claimants had a crop of potatoes and corn on some of the fourteen and three-quarters acres of lowlands.

The land lying to the westerly and northerly side of the new canal was somewhat higher than the bed of the new canal and the surface water that did not find its way into Haskins brook drained into the canal.

On July 22, 1925, and during the evening previously thereto, there was an extraordinarily heavy fall of rain and some surface water drained into the new canal which was rather negligible in amount and Haskins brook became a roaring torrent and discharged large quantities of water into the new canal, so much so that the level of the canal was raised so that the bank on the easterly or northerly side thereof overflowed upon the lands of the claimants to such an extent that they flooded the same and destroyed about seven acres of potatoes then growing on the land and somewhat injured an acre of corn.

Now, as to the surface waters, we do not think any one claims that there were sufficient surface waters to cause such a rise in the canal level.

Our understanding of the law is that so far as surface water is concerned, an owner may barricade, ditch or do anything to prevent it coming onto his lands from adjoining lands except that he cannot collect it and discharge it in bulk or quantities on his neighbor.

(*Barkley* v. *Wilcox*, 86 N. Y. 140.)   This proposition is so well settled in the law that it requires no further citations.   This rule applies to the State as well as to an individual.

We believe that the proof shows that the bulk of this water which flooded claimants' land came from Haskins brook.   Previously to the construction of any canal, this water spread out over these lowlands and created an uncultivable swamp.

Our understanding of the law as expressed by the Court of Appeals in the case of *Stone* v. *State* (138 N. Y. 124) is that if the land would have been flooded if nothing had been done by the State, the claimants cannot recover because the work of the State failed to prevent the flooding.

In that case the State had changed the natural course of the Genesee river where it passes through the towns of Hume and Caneadea in Allegany county and had built an embankment to prevent the water in the river from flowing in its natural course. A flood came and the embankment constructed by the State failed and the claimants' lands in that case were flooded.   Chief Judge ANDREWS, in writing for a unanimous decision of that court, says (at p. 130), " the State was under no obligation to maintain it [meaning the bank] to protect lands which would have been flooded to the same extent if the improvement had not been made."   This seems to be the leading case on the subject and has not been modified and has been cited with approval many times since.

We believe that it was proven by a fair preponderance of the evidence that the lands leased by the claimants would have been flooded by the surface water and the large quantity of water which came from Haskins brook if a canal had never been built.   In fact, the towpath or road constructed by the State in excavating the new canal furnished some measure of protection by creating a barrier between the lands leased by the claimants and the flood water.   It was not an overflow of the canal but was an overflow of Haskins brook created by the run-off into said brook caused by a storm on a single evening and day.

The construction of the fills and culverts in the old canal has no bearing on this case.   They were sufficient to carry off the water of the old canal, and even if they were not sufficient, it seems to us they come within the rule laid down in *Stone* v. *State* (*supra*) and cause no reason for a claim for damages against the State.

The claim should, therefore, be dismissed on the merits.

POTTER, J., concurs.