EMMA O. BENNETT *v.* JOHN CUPINS and Others, as the Board of Trustees of School District No. 4 of the Town of Dickinson, New York.

Supreme Court, Broome County, —— —, 1928.

**Nuisances — action to abate private nuisance and for damages — defendants' school district graded its lot so that surface water drained toward plaintiff's lot — roadway on school lot adjoining plaintiff's lot acted as drain — water was discharged from roadway onto plaintiff's lot — plaintiff may recover.**

Defendants' school property adjoins plaintiff's premises on the east. The rear of the school property originally was lower than plaintiff's property and surface water from plaintiff's property drained onto the school property. The defendants filled in and graded their property so that it was made higher than plaintiff's property and surface water therefrom drained into a driveway on defendants' property and thus was discharged directly onto plaintiff's property. Plaintiff seeks to abate the drainage of the water as a private nuisance. The defendants, having diverted the course of surface waters into a channel or roadway along the margin of their lot, and having cast the water thus diverted into a channel upon the plaintiff's lot, have committed a nuisance and they may be restrained.

The plaintiff is entitled to the difference in rental value caused by the act of the defendants during the time the nuisance was maintained and she is also entitled to special damages consisting of the expense of cleaning her premises and removing the water therefrom, and she may have an injunction restraining the nuisance.

The plaintiff cannot recover as part of her damages the cost of concrete to replace rotted sills and floors in her barn, for the evidence does not show that the water created that condition. Nor may she recover money estimated as the cost of cleaning up her property. In case the defendants fail to abate the nuisance within a reasonable time, the plaintiff is entitled to recover $1,500, which

amount represents the proven depreciation of the value of her residence and tenant house and barn, but she cannot recover for depreciation of certain building lots lying beyond her house and barn, for the evidence does not show that the water injuriously affected those lots.

ACTION to abate private nuisance.

*James T. Rogers,* for the plaintiff.

*George H. Zator,* for the defendants.

RHODES, J.　The action is in equity.　The complaint demands judgment that the defendant school district be compelled to abate a private nuisance and for damages caused to plaintiff's premises by said nuisance and trespass.　It is alleged in the complaint and supported by the proof that the school property adjoins plaintiff's premises on the east.　In the rear the school property originally was lower than plaintiff's property in the rear thereof, so that surface water drained from plaintiff's property onto the property of the defendant and, therefore, in this respect defendant's property was servient to plaintiff's.　In its original state defendant's lot was uneven in surface.　Defendant constructed a school building on its lot and levelled and graded it so that thereafter surface water, dirt, gravel and other materials were cast upon plaintiff's premises from defendant's.　Plaintiff does not claim that defendant diverted the course of a stream, but seeks entirely to recover for damages from the diversion of surface water as aforesaid.

Defendant insists that plaintiff has no remedy, relying particularly upon the case of *Barkley* v. *Wilcox* (86 N. Y. 140). That was a case where the owner of a lot servient as to surface water to plaintiff's higher lot adjoining, built a house on his lot, filled it in and graded up the sidewalk in front of it whereby he cut off the flow of the surface water by which thereafter an unusually large accumulation in the street flowed upon plaintiff's property and in his cellar.　The court said: "In such water, before it leaves his land and becomes part of a definite water-course, the owner of the land is deemed to have an absolute property, and he may appropriate it to his exclusive use, or get rid of it in any way he can, provided only that he does not cast it by drains, or ditches, upon the land of his neighbor; * * *.　The owner of wet and spongy land cannot, it is true, by drains or other artificial means, collect the surface water into channels, and discharge it upon the land of his neighbor to his injury.　This is alike the rule of the civil and common law. * * * But it does not follow, we think, that the owner of land, which is so situated that the surface waters from the lands above, naturally descend upon and pass over it, may not in good faith, and for the purpose of building upon or improving

his land, fill or grade it, although thereby the water is prevented from reaching it and is retained upon the lands above."

In the case at bar there exists a driveway or roadway along the western side of the school property. Into this the surface water from the school lot drained and water collected and running along and across the roadway which produced somewhat the effect of a ditch, the water passed on to plaintiff's land causing the damage complained of. In the above case relied upon by the defendant, the court said: " There is a manifest distinction between casting water upon another's land, and preventing the flow of surface water upon your own." I think the defendant has failed to appreciate the distinction between the case at bar and the case cited. In that case the one sought to be charged graded his land in such a manner as to prevent surface waters from coming down upon it. In this case the defendant has diverted the course of surface waters upon its servient lot and has diverted them into a channel or roadway along the western part of its lot, and thus cast the water and debris over upon plaintiff's land. I think the plaintiff is entitled to invoke the maxim " so enjoy your own rights as not to injure those of another," within the authority of *Jutte* v. *Hughes* (67 N. Y. 267); *Davis* v. *Niagara Falls Tower Co.* (171 id. 336); *Mairs* v. *Manhattan Real Estate Association* (89 id. 498); *Hay* v. *Cohoes Co.* (2 id. 159). In the last case the court said: " The use of land by the proprietor is not therefore an absolute right, but qualified and limited by the higher right of others to the lawful possession of their property. To this possession the law prohibits all direct injury, without regard to its extent or the motives of the aggressor. A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance to the annoyance of the adjoining proprietor, even for the purpose of a lawful trade. (*Alfred's Case,* 9 Coke, 58.) He may excavate a canal, but he cannot cast the dirt or stones upon the land of his neighbor, either by human agency or the force of gunpowder. If he cannot construct the work without the adoption of such means, he must abandon that mode of using his property, or be held responsible for all damages resulting therefrom. He will not be permitted to accomplish a legal object in an unlawful manner."

I think, therefore, the plaintiff has established a cause of action. It remains to determine what relief should be granted. She is clearly entitled to the diminished rental value caused by the defendant during the time the nuisance has continued. (*Jutte* v. *Hughes, supra.*) She is also entitled to the special damages she suffered in cleaning up her premises, removing the water and debris cast thereon (*Munn* v. *City of Hudson,* 61 App. Div. 343), and in

addition she is entitled to an injunction restraining the defendant from continuing such nuisance, and in case of the failure of the defendant to abate the same, she is entitled to damages for the permanent injury to the freehold. (See *Barrick* v. *Schifferdecker*, 123 N. Y. 52.)

Plaintiff insists that she is entitled to an aggregate of $2,353.20 for materials and labor in cleaning up the debris and repairing the damage caused by the water and materials cast upon her land. It seems to me, however, that this amount has not been clearly established. Included in this amount which she seeks to recover is the cost of the concrete to replace rotted sills and floors in her barn. I do not think it is sufficiently established that this condition was necessarily caused by the water coming from defendant's land. Most of the other items of labor are estimates as to the amount of labor which would be required to clean up after an approximate number of storms per year. It does appear that plaintiff paid to Mr. Hand $12.50 for labor in cleaning up. This should be allowed together with $8 paid for two loads of cinders to repair her driveway. There is testimony to support the proposition that the diminished rental value of plaintiff's residence and of the tenant house during the time the nuisance has existed amounted to the sum of $1,735. For this amount she should be compensated, being for the period from June, 1921, when the first flooding of her premises occurred, until the time of the trial on March 25, 1927. (See *Francis* v. *Schoellkopf*, 53 N. Y. 152; *Jutte* v. *Hughes*, *supra; Barrick* v. *Schifferdecker*, 123 N. Y. 52.) As to the permanent damages to the freehold in case the nuisance is not abated, there is testimony to show that the depreciation in value of the residence and tenant house, barns and lawn would be $1,500. This amount plaintiff should recover in case the defendant does not abate the nuisance within a reasonable time. She also seeks to recover for depreciation in value of certain building lots constituting part of her premises to the west of her residence. I do not think it is sufficiently established that any of the diverted water will reach or injuriously affect these lots, and, therefore, no damages are awarded for injury or depreciation thereto.

Plaintiff should, therefore, have judgment in accordance herewith, together with costs.