**ROTH et al. v. GREAT ATLANTIC & PACIFIC TEA CO., Inc.**

Civ. No. 11561.

United States District Court, E. D. New York.

Nov. 26, 1952.

Frederic A. Johnson, and William M. Kunstler, New York City, for plaintiffs.

Weisman, Celler, Quinn, Allan & Spett, New York · City, for Great Atlantic & Pacific Tea Company, Inc., Abraham Shapiro, New York City, of counsel.

Dreyer & Traub, Brooklyn, N. Y., for third party defendants. By Seymour C. Simon, and Sylvan D. Freeman, Brooklyn, N. Y.

GALSTON, District Judge.

This is an action brought by the owners of abutting houses and lots to recover damages for alleged negligent flooding of their premises, and for an injunction to restrain the defendant from maintaining the conditions which are alleged to have created the flooding.

According to the allegations of the complaint, the plaintiffs are owners of property located on 80th Street, near Caldwell Avenue, in Elmhurst, Borough of Queens, City of New York. The defendant, The Great Atlantic and Pacific Tea Co., Inc. (referred to hereinafter as the A & P), some time in 1950, it is alleged, contemplated the erection of a retail store and parking lot on a vacant parcel of land contiguous to the premises owned by the plaintiff, Novsam. This parcel is located on the corner of 80th Street and Caldwell Avenue, and extends to 81st Street. Eight separate causes of action are set forth. They may be summarized as follows:

(1) that the defendant entered into a contract with an architect for the preparation of plans for the construction of the retail store and parking lot, which plans were defective in that they failed to provide for the erection of an adequate retaining wall for the preservation of the plaintiffs' rights to a lateral support;

(2) that the plans failed to provide for proper drainage facilities on the premises occupied and controlled by the defendant, by reason of which the defendant "has cast, is casting and will continue to cast water from the property on which its store and parking lot are located on to the land of the plaintiffs";

(3) that the plans contemplated the raising of the level of the defendant's land to such an extent that a valley was created on the plaintiffs' lands;

(4) that the plans violated the City and State laws, ordinances and regulations pertaining to excavation and construction;

(5) that the architect selected by the defendant for the preparation of the required plans was not competent and was engaged by the defendant with knowledge of his incompetency;

(6) that the defendant selected the contractors for the construction of the store and parking lot knowing that said contractors were not competent;

(7) that the defendant, by reason of the aforesaid construction, interrupted the natural drainage of water over the plaintiffs' lands, although knowing the plaintiffs had a right to such natural drainage by way of an easement; and

(8) that by reason of the aforesaid defective plans and the construction of the

store and parking lot pursuant thereto, the defendant had created and is maintaining a nuisance.

The defendant, A & P, by answer, entered in effect a general denial. Subsequently it filed a third-party complaint against Samuel J. Lefrak, as the owner of the premises and building in question and the person alleged as responsible for the planning and construction of the building.

After a jury had been duly empaneled and sworn, the attorneys for the respective parties entered into a stipulation agreeing to waive the jury and to have the cause tried by the Court, without findings of fact or conclusions of law.

During the course of the trial, the motion of the plaintiff, Novsam, to withdraw as a party was granted, with prejudice. On motion of A & P, the defendant and third-party plaintiff, the third-party complaint was amended so as to include Beachport Homes, Inc., as a third-party defendant. The answer to the third-party complaint was also amended, on motion, so as to allege ownership, possession and control of the premises involved in Beachport Homes, Inc., rather than in Lefrak.

The plaintiffs failed to present any evidence of any right to lateral support or any violation of such right by the defendant. Nor was there any evidence adduced by plaintiffs that the plans "contemplated the raising of the level of the defendant's land to such an extent that a valley was created on plaintiffs' lands," nor that "defendant did create such a valley," as alleged in their complaint. Moreover, the plaintiffs' submitted no evidence to show that the defendant engaged or selected, or was responsible for the engagement or selection of either the architect or the contractors responsible for the plans and construction of the building in question. So too, the plaintiffs submitted no proof of the existence of an easement by prescription. It necessarily follows that the plaintiffs failed to sustain their burden of proof to show liability in the defendant in respect to these allegations of the complaint.

The essential basis for the plaintiffs' claims is the alleged failure of the defend-ant to provide proper drainage facilities on the premises occupied by its store. The evidence adduced shows that their complaint of water being cast upon their lands by virtue of the alleged improper drainage facilities, refers to storm waters draining down from their lands and in the direction of the land occupied by the A & P store, due to the natural slope of the area. The complaint has no reference, insofar as the evidence indicates, to storm waters falling on the premises occupied by the defendant and then draining off upon the plaintiffs' land because of improper or inadequate drains. In other words, what they object to is the fact that surface water constituting the run-off from storms, which formerly flowed down and across their lands, across the then vacant land and out into the street, was now unable to run off because of the construction of the building and retaining wall now leased by the defendant. In effect, the evidence fails to show that the defendant is "casting" water from the property on which its store and parking lot are located on to the plaintiffs' lands. What it does show is that run-off of storm waters from the plaintiffs' lands is no longer free to flow over the premises now occupied by the defendant as it formerly did while the land was a vacant lot.

This inability of the run-off from the storm waters to drain off as it formerly did, which was characterized by the plaintiffs as a "damming up" of the water, is the only basis shown for their charges of negligence and alleged violation of law, ordinances and regulations. It is their contention that the defendant should have foreseen that the construction of their store and so called "retaining wall" would cause this run-off to be dammed up and cause damage to the plaintiffs. The negligence claimed, according to the evidence, is the failure of the defendant to make provision, in constructing the building, to see that this run-off from the plaintiffs' lands would drain out into the street on Caldwell Avenue as it had done before the building was constructed.

The question whether the owner of the lower tenement may not, even in good faith and for the purpose of improving or build-

ing upon his own land, obstruct the flow of such water to the injury of the owner above, was before the Court of Appeals of New York, in Barkley v. Wilcox, 86 N.Y. 140. The parties owned adjacent lots on a street. The natural formation of the land was such that surface water from rain or melting snows would descend and accumulate in the street in front of plaintiff's lot, and in times of unusual accumulations would run off over a natural depression across the defendant's lot. Defendant built a house on his lot, filled in the lot and graded up the sidewalk in front of it so as to cut off the flow of the surface water. Thereafter, there was an unusually large accumulation of water from melting snow and rains in front of the plaintiff's premises, so that the water ran into the cellar of his house and occasioned serious damage. According to the findings of the trial court, the filling in of the defendant's lot had the effect of increasing the accumulation of water on the plaintiff's lot and contributed to the injury to his property. The Court of Appeals, however, held that the defendant was not liable, and reversed the decision in the lower court for the plaintiff. The court pointed out that the law has always recognized a distinction between the right of an owner to deal with surface water falling or collecting on his land, and his right in the water of a natural watercourse. With respect to surface water, the court stated the law in New York to be as follows:

"The owner of wet and spongy land cannot, it is true, by drains or other artificial means, collect the surface water into channels, and discharge it upon the land of his neighbor to his injury. * * * But it does not follow, we think, that the owner of land, which is so situated that the surface waters from the lands above naturally descend upon and pass over it, may not in good faith, and for the purpose of building upon or improving his land, fill or grade it, although thereby the water is prevented from reaching it and is retained upon the lands above. There is a manifest distinction between casting

water upon another's land, and preventing the flow of surface water upon your own."

Upon considerations of public policy and general utility, the court concluded that it was better to establish a rule which will permit the reclamation and improvement of low and waste lands, to one which will impose upon them a perpetual servitude, for the purpose of drainage for the benefit of upper proprietors. The New York decisions have uniformly held since then that the lower owner may, in good faith and for the purpose of building and improving his land, fill or grade it, although thereby surface water is cast back on the lands above. See, e. g., Bennett v. Cupino, 253 N.Y. 436, 171 N.E. 698; Town of Hamburg v. Gervasi, 269 App.Div. 393, 55 N.Y. S.2d 876.

The plaintiffs also contend that the defendant violated certain laws, ordinances and regulations. They rely mainly upon Sections 275 and 276 of the Sanitary Code of the City of New York. These sections read as follows:

"§ 275. No change shall be made in the drainage, sewerage, or the sewer connection of any house or premises, involving changes in the drainage, sewerage, or sewer connection of any other house or premises, unless at least 30 days' notice thereof in writing shall have been previously given to this department, and to the owner or occupant of the premises affected by such change.

"§ 276. Every person using, making, or having any drain, soil-pipe, passage, or connection between any sewer (or any river or other body of water) and any ground, building, erection, or place of business, every owner or tenant of any such ground, building, or erection or place of business, and every person, board, department, or officer occupying or interested in, any such ground, building, erection, or place of business, shall, to the extent of the right and authority of each, cause and require such drain, soil-pipe, passage, or connection to be at all times adequate

for the purpose of conveying and allowing, freely and entirely, to pass whatever enters or should enter the same."

The defendant called as a witness Harry Fitts, employed by the City of New York as an engineer of sewer maintenance. Fitts testified that the words "drainage" and "drain", used in the above sections of the Sanitary Code, are construed by the Health Department of the City of New York as referring to actual pipes or other "apparatus" carrying drainage and sewage and to the maintenance thereof. This appears to be a reasonable construction. The plaintiffs presented nothing to refute it, nor did they show the existence of any other interpretation or construction of the sections. The construction of the store now occupied by defendant did not change the operation of any drainage pipes of the plaintiffs. It must be concluded, therefore, that neither Section 275 nor 276 has any bearing or relevancy here.

■ Reference was also made to certain sections of the Administrative Code of the City of New York during the testimony of Fred C. Dahlen, the expert called by the plaintiffs. These sections of the Code deal with drainage of yards, areas and roofs. These sections of the Administrative Code are apparently a part of the Building Code, and have reference to drainage facilities required by law to prevent damage to the walls and foundations of the building of which the drainage facilities are a structural part. In view of the law in New York, as indicated by the cases cited earlier herein, the provisions of these sections cannot be construed as requiring drains or gutters to dispose of storm waters falling on adjoining property, as plaintiffs seem to contend.

■■ Nor do the facts disclose a basis for finding any liability on the part of the defendant, A & P. The undisputed evidence shows that it was only the lessee and not the owner of the premises in question. Moreover, the evidence is plain that the planning and construction of the building leased by the defendant were the responsibilities of the lessor and not the lessee. The plaintiffs seek to create liability by asserting that the defendant had the right, under the terms of its lease, to approve the architect's plans and specifications and the right to inspect the premises before taking possession. In New York, a builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury. Ryan v. Feeney & Sheehan Building Co., 239 N.Y. 43, 145 N.E. 321, 41 A.L.R. 1. In view of the established law in New York, as already indicated, that there is no absolute right in a property owner to have storm waters drain off on his neighbor's land, the failure to plan for or construct some means whereby storm waters draining down from the plaintiffs' lands would run off, cannot be considered any kind of defect.

■ The plaintiffs assert that the injury caused them by storm waters should have been foreseen by the defendant. However, there must be a violation by the defendant of a legally protected interest which belongs to the plaintiffs. Palsgraf v. Long Island R. R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253. From the foregoing it must be concluded that the plaintiffs have failed to prove the defendant violated a duty owed to the plaintiffs.

■ Judgment may be entered for the defendant. With respect to the third-party action, since no liability is found as against the defendant, the action becomes moot.